UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21167-VALLE

<u>CONSENT CASE</u>

CARLOS LUIS CORDOVA,

       Plaintiff,

v.

LELAND DUDEK,[1] Acting
Commissioner of the Social
Security Administration,

       Defendant.
_____/

## **<u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>**

THIS MATTER is before the Court on Plaintiff Carlos Luis Cordova's Motion for Summary Judgment (ECF No. 8) ("Plaintiff's Motion") and Defendant Commissioner of the Social Security Administration's Cross Motion for Summary Judgment (ECF No. 9) ("Defendant's Motion") (collectively, the "Motions"). Pursuant to Administrative Order 2023-18, this case is before the undersigned for all proceedings, including trial and entry of final judgment. *See* (ECF No. 5 at 1).

Accordingly, after due consideration of the record, the Motions, Defendant's Response (ECF No. 10), and Plaintiff's Reply (ECF No. 11), and being otherwise fully advised on the matter,

---

[1] Leland Dudek was named Acting Commissioner of Social Security in February 2025. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Martin O'Malley as Defendant in this suit. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff's Motion **DENIED**, Defendant's Motion is **GRANTED**, and the Administrative Law Judge's decision (the "ALJ's Decision") is **AFFIRMED** for the reasons set forth below.

## I.        PROCEDURAL HISTORY

In September 2020, Plaintiff applied for social security disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of July 1, 2018.  (R. 185-89).[2]  Plaintiff's application was denied initially and again upon reconsideration.  (R. 88-91, 92-111).  Plaintiff requested a hearing, (R. 112-13, 138-43), which was held on March 23, 2023, before Administrative Law Judge ("ALJ") Carol Pennock.  (R. 25-51, 160-66).  Plaintiff, accompanied by counsel, and a Vocational Expert ("VE") testified at the hearing.  (R. 30-49).  On September 14, 2023, the ALJ issued her Decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 10-20).  Thereafter, Plaintiff sought review of the ALJ's Decision.  (R. 181-84).

On February 2, 2024, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.        STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C.

---

[2] All references are to the record of the administrative proceeding.  *See* (ECF No. 7).

§ 405(g).  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (noting substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  Even if evidence preponderates against the ALJ's Decision, the Court must affirm "if the decision is supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022).  Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. § 423 (standard for DIB).  A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

> (1)    Is the person presently unemployed?
> (2)    Is the person's impairment severe?
> (3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
> (4)    Is the person unable to perform his or her former occupation?
> (5)    Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB).  An affirmative answer to any of the above questions leads either to the next question or, in Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-CV-10507, 2022 WL 3448090 (11th Cir. 2022).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. § 404.1520(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work

available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Grids (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain other employment in the national economy. *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

In September 2023, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "was not under a disability within the meaning of the [Act] from July 1, 2018, through the date last insured." (R. 10); *see* (R. 20).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from Plaintiff's alleged onset date (July 1, 2018) through his date last insured (December 31, 2022). (R. 12).

At Step 2, the ALJ concluded that Plaintiff had the following severe impairments: (i) HIV infection; (ii) depressive disorder; and (iii) generalized anxiety disorder. *Id.* Conversely, the ALJ found that Plaintiff's hypogonadism (low testosterone level) was not a severe impairment. *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. (R. 12-14).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with various exertional and non-exertional limitations. (R. 14-15). More specifically, the ALJ concluded that Plaintiff: (i) could occasionally climb; (ii) must avoid

concentrated exposure to hazards; and (iii) could perform simple routine tasks with occasional interaction with coworkers, supervisors, and the general public.  (R. 14-15).

Based on this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a business services sales agent or sales manager.  (R. 19).  The ALJ thus proceeded to Step 5 of the sequential analysis.  At Step 5, the ALJ found that Plaintiff could perform other jobs in the national economy, such as a housekeeping cleaner, racker, or produce sorter, all jobs with a light unskilled exertional level and an SVP of 2.  (R. 20).  The ALJ then concluded that given Plaintiff's age, education, work experience, and RFC, Plaintiff had not been under a disability from the alleged onset date through his date last insured.  *Id*.

## IV.  <u>DISCUSSION</u>

On appeal, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by "not appropriately and adequately consider[ing] the 'total limiting effects' of Plaintiff's mental impairments, as described by [the] SSA's own reviewing and examining experts, [Plaintiff's] testimony, and the record generally, requiring remand."  (ECF No. 8 at 3).  For the reasons discussed below, however, the undersigned finds that the ALJ applied the proper legal standards and that her Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision is affirmed.

### A.  Standards for Evaluating Medical Opinion Evidence

Social Security regulations require the ALJ to consider and evaluate all evidence, including all medical opinions.  20 C.F.R. § 404.1513(a).  Medical opinions are statements "from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and

mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. § 404.1513(a)(2).  Where there are conflicting medical opinions, it is the ALJ's duty to weigh the evidence.  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008).

Under the current regulations, while a medical source's treatment relationship is a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is not entitled to controlling weight or deferential treatment.  *See Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5743332 (S.D. Fla. Dec. 2, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021).  Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record.  20 C.F.R. § 404.1520c(c)(1)-(2).  These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[3]  20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla,* 2020 WL 9048787, at *4.  Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c)(3)-(5).  Furthermore, although the ALJ must articulate how she considered medical opinions from all medical sources, the ALJ need only explain her

---

[3] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1).  "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. § 404.1520c(c)(2).

consideration of the supportability and consistency factors. *Bonilla,* 2020 WL 9048787, at *5; 20 C.F.R. § 404.1520c(b)(2). Additionally, although an ALJ is not required to adopt the prior administrative medical findings of State Agency consultants, the ALJ must consider this evidence in accordance with the Act's regulations. 20 C.F.R. § 404.1513a(b)(1).

**B.  The ALJ Properly Evaluated the Medical Evidence in Assessing Plaintiff's RFC**

Against this legal backdrop, Plaintiff argues that the ALJ's RFC determination is flawed because the ALJ failed to properly evaluate: (i) the opinions of one-time State psychological examiners Dr. Jack Weitz and Dr. Angela Brinson; (ii) the opinion of Dr. Michelle Butler (the State Agency reviewer at the reconsideration level); and (iii) Plaintiff's testimony regarding the limiting effects of his symptoms. *Id*. at 7-13. For the reasons discussed below, however, the undersigned finds that the ALJ properly evaluated the medical opinions and Plaintiff's testimony, applied the proper legal standards, and substantial evidence supports the ALJ's RFC determination.

*1.  Dr. Jack Weitz*

In July 2021, Dr. Weitz conducted a one-time mental status examination of Plaintiff and issued a Psychological Evaluation (the "Evaluation"). (R. 755-57) (Exhibit 9F). During the pre-examination interview, Plaintiff recounted experiencing symptoms of depression and anxiety "for several years," including "low mood, low energy, and limited motivation." (R. 755). Plaintiff also described feeling "very uncomfortable in new places and with new people" and stated that his anxiety worsened after a 2020 motor vehicle accident, so he now avoids driving. *Id.* Plaintiff further stated that he had undergone outpatient psychotherapy treatment "a few years ago," but had discontinued treatment and related medications because he did not find them to be helpful. (R. 756). In terms of his daily routine, Plaintiff described sleep difficulties and weight gain from

poor eating habits but acknowledged being capable of "all self-care tasks and [assisting] with some household chores." *Id.* Lastly, Plaintiff stated he sometimes lacked motivation to get out of bed. *Id.*

Upon examination, despite Plaintiff's reported symptoms, Dr. Weitz made mostly normal mental status findings, including: (i) low-average to average intellectual functioning; (ii) adequate fund of knowledge, abstract reasoning, and long-term memory; (iii) adequate mental manipulations (with effort); and (iv) adequate attention and motor activity. *Id.* Dr. Weitz also noted that Plaintiff's short-term memory "seemed limited" and his speech was pressured and confused at times, perhaps due to an existing language barrier. *Id.* Dr. Weitz also noted that Plaintiff's mood "seemed generally dysthymic, and his affect was typically flat." *Id.* Dr. Weitz concluded that Plaintiff's "medical records *should* be reviewed" and recommended that Plaintiff undergo a psychiatric evaluation to determine if psychotropic medication was warranted. *Id.* (emphasis added). Dr. Weitz concluded that Plaintiff "would likely benefit from outpatient psychotherapy to address mood symptoms." *Id.* Dr. Weitz diagnosed Plaintiff with persistent depressive disorder (dysthymia)[4] and unspecified anxiety disorder. *Id.*

In the Motion, Plaintiff concedes that Dr. Weitz "did not offer an assessment of [Plaintiff's] work-related limitations." (ECF No. 8 at 14). In the absence of such findings about what Plaintiff could still do despite his impairments or whether Plaintiff had any work-related limitations, Dr. Weitz's Evaluation is not a "medical opinion" that the ALJ was required to consider or weigh. 20 C.F.R. § 404.1513(a)(2); *see, e.g.*, *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (finding records that did not contain judgments about the nature and severity of

---

[4] Dysthymia is often referred to as "low-grade depression." https://adaa.org/learn-from-us/from-the-experts/blog-posts/consumer/dysthymia/depression (last visited March 20, 2025).

claimant's impairments were not medical opinions that ALJ was required to weigh); *Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 793 (11th Cir. 2016) (finding medical records that "contained only general physical information and a referral" were not a medical opinion that ALJ was required to weigh).[5]   Accordingly, the ALJ properly declined to consider Dr. Weitz's Evaluation findings in determining Plaintiff's RFC.

### 2.   *Dr. Angela Brinson*

At the Agency's request, Dr. Brinson conducted a one-time clinical evaluation with mental status examination of Plaintiff ("Dr. Brinson's Opinion").   (R. 758-62) (Exhibit 10F).   In preparation for the April 2022 mental status examination, Dr. Brinson reviewed: (i) a single January 13, 2022 treatment note from Plaintiff's treating doctor (Dr. Jorge Rangel);[6] (ii) Dr. Weitz's July 2021 Evaluation; and (iii) Plaintiff's reported symptoms.   (758-59).

Plaintiff reported, among other things, feeling depressed, struggling with anger management, being stressed due to housing issues, feeling lonely and anxious (with racing thoughts, muscle tension, restlessness, and fatigue), struggling with physical ailments, employment difficulties, insomnia, difficultly communicating, panic (including shortness of breath, shakiness, heart palpations, sweating, fear of choking, fear of passing out, inability to focus), and difficulty concentrating.   (R. 759).   Plaintiff relayed his HIV diagnosis, for which he

---

[5] In addition to not including any work-related limitations, the Evaluation contains other critical shortcomings.   For example, Dr. Weitz's diagnosis of persistent depressive disorder and unspecified anxiety disorder is based exclusively on Plaintiff's self-reported mental health history and symptoms.   (R. 755-56).   Indeed, Dr. Weitz suggests that Plaintiff's "medical records *should be* reviewed," something he did not do.   (R. 756) (emphasis added).

[6] Dr. Rangel treated Plaintiff for HIV and low testosterone levels.   *See generally* (R. 300-52, 388, 442, 531-63, 581-613, 631-754) (Exhibits 1F, 2F, 5F, 8F).   More specifically, from July 2017 through January 2023, Plaintiff visited Dr. Rangel approximately 14 times.   Of the 14 visits with Dr. Rangel, Dr. Brinson reviewed only the treatment notes for Plaintiff's January 13, 2022 visit. *See* (R. 531-37); *see also* (R. 581-87) (duplicate copies).

was prescribed Biktarvy.  *Id*.  Plaintiff also endorsed feelings of sadness, irritability, anhedonia, low energy, guilt, and psychomotor retardation.  (R. 760).  According to Plaintiff, his physical health complications, depression, anxiety, and interpersonal issues adversely affect his activities of daily living.  (R. 761).

Upon observation, Dr. Brinson noted Plaintiff's appearance and hygiene were appropriate. *Id*.  Plaintiff had a shuffling gait, average balance, and slow motor activity.  *Id*.  His eye contact and hearing were consistent.  *Id*.  His voice, pitch, tone, and language skills were also within normal limits.  *Id*.  Dr. Brinson further noted that Plaintiff was alert, although occasionally distracted.  *Id*.  Plaintiff's intelligence and insight were average, and his judgment and impulse control were fair.  *Id*.  Lastly, Plaintiff's thought process was goal-directed with periods of preservation.  *Id*.

Upon mental status examination, Dr. Brinson found that Plaintiff was alert and oriented to person, time, day, and place, with some difficulty relaying background information sequentially. *Id*.  In addition, Plaintiff: (i) had appropriate short-term and average long-term memory; (ii) had average attention; (iii) had poor concentration; (iv) could complete a simple three-step command; (v) had average ability to perform complex commands; (vi) had an average general fund of knowledge and abstract reasoning; (vii) could complete mental calculations; and (viii) had good deductive reasoning and visual-motor coordination.  (R. 760-61).

Ultimately, Dr. Brinson opined that "[t]he history provided and observations made, together with [Plaintiff]'s responses on the mental status examination, indicate some cognitive impairment, likely due to [Plaintiff's] psychiatric and medical conditions."  (R. 761).  Thus, Dr. Brinson concluded that Plaintiff did not appear capable of obtaining or sustaining employment

"as a result of cognitive awareness deterioration due to his psychiatric condition."  (R. 762); *see also* (R. 761).

> In evaluating Dr. Brinson's opinion, the ALJ wrote:

> I considered the opinion of consultative examiner, Angela Brinson, Ph.D. who opined that the claimant does not appear capable of obtaining or sustaining employment as a result of his cognitive awareness deterioration and found that this opinion was not persuasive (Ex. 10F). In reaching this finding, I found that this view was not supported by Dr. Brinson's examination of the claimant in which she noted that the clinical findings point to only low to average performance on all of his tasks (Ex. 10F/4). Further, this view was not consistent with [Plaintiff's] extremely limited mental health treatment.

(R. 17-18).

In discounting Dr. Brinson's Opinion that Plaintiff was not capable of obtaining or sustaining employment, the ALJ adequately addressed the required supportability and consistency factors.  As to supportability, the ALJ correctly noted that Dr. Brinson's examination of Plaintiff revealed mostly average findings, which the undersigned detailed above.   Dr. Brinson's observations of Plaintiff, coupled with her mostly normal examination findings, simply do not support Dr. Brinson's disabling Opinion.  (R. 17-18); *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  In addition, other than a single treatment note from Plaintiff's January 2022 visit to Dr. Rangel, Dr. Brinson did not review any other medical records (except for Dr. Weitz's equally unsupported Evaluation), and relied on Plaintiff's self-reports, without other supporting objective medical evidence. Moreover, the January 2022 treatment note that Dr. Brinson did review reflects that Plaintiff scored

"0" on a PHQ-9 test, negating any symptoms of depression.[7]  (R. 535) (1/13/22 treatment note).

Rather, Dr. Rangel's note reflects that Plaintiff denied feeling tired or having little energy; denied

difficulty concentrating; denied feeling restless, hopeless, or depressed; denied sleep disturbances;

denied loss of pleasure from activities or lack of interest; denied any difficulty in his activities of

daily living; and was otherwise asymptomatic.  (R. 531, 533, 535).

As to consistency, the ALJ correctly found that Dr. Brinson's Opinion was inconsistent

with Plaintiff's "extremely limited mental health treatment."  (R. 18); *see* 20 C.F.R.

§ 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.");

*see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267-68 (11th Cir. 2015) (noting an "ALJ

may consider the level or frequency of treatment when evaluating the severity of a claimant's

condition" but finding error in discrediting medical opinion based on negative inference drawn

from lack of continued treatment where evidence in the record showed claimant's inability to pay).

Substantial evidence supports the ALJ's conclusion regarding the scarcity of Plaintiff's

mental health treatment.  For example, treatment notes from Compass Health Systems ("CHS")

confirm that Plaintiff visited the clinic only three times for mental health evaluation and treatment

in the Spring of 2022.  (R. 615-24) (CHS treatment notes for 3/18/22, 4/1/22, and 5/6/22).  Plaintiff

first visited CHS on March 18, 2022, for a depression and anxiety screening.  (R. 623, 625).  At

this visit, despite Plaintiff's complaints of difficulty sleeping, panic attacks, and lack of focus,

---

[7] The Patient Health Questionnaire ("PHQ-9") is a multiple-choice self-report that is used as a screening and diagnostic tool for mental health disorders, including depression and anxiety.  A score of 0 to 4 is interpreted as negative for depression.  *See* https://www2.gov.bc.ca/assets/gov/health/practitioner-pro/bc-guidelines/depression_patient_ health_questionnaire.pdf (last visited March 20, 2025).

motivation, and interest, examination revealed normal mental status.  (R. 625).  These normal

findings included normal appearance, attitude, activity, speech, mood, and affect.  (R. 626).

Plaintiff's concentration and attention were also normal, long-term and short-term memory were

intact, thought processes and content were normal and goal directed, information and intelligence

were average, insight was fair, judgment and reliability were good, and he was oriented to person,

place, and time.  (R. 627).  Plaintiff was diagnosed with moderate major depressive disorder (single

episode), generalized anxiety disorder, and adjustment disorder with mixed anxiety and depressed

mood.  *Id*.  He was prescribed Zoloft and referred to psychotherapy.  *Id*.  At Plaintiff's April 1,

2022 visit, Plaintiff reported that he stopped taking Zoloft after reading about possible side-effects.

(R. 621).  Despite Plaintiff's complaint that his mood remained unchanged, mental status

examination findings were again normal.  (R. 622).  Then, at Plaintiff's last visit to CHS on May

26, 2022, mental status examination again reflected normal findings and Plaintiff again scored "0"

on the PHQ-9, negating symptoms of depression.  (R. 615, 618).  Thus, the totality of Plaintiff's

mental health records undermine Plaintiff's statements of disabling symptoms and Dr. Brinson's

Opinion.[8]

Accordingly, the undersigned finds that the ALJ properly weighed Dr. Brinson's Opinion,

the proper legal standards were applied, and substantial evidence supports her RFC determination.

### 3.  *Dr. Michelle Butler*

Plaintiff also challenges the ALJ's consideration of the opinion of Dr. Butler, the State

Agency doctor who reviewed Plaintiff's records upon reconsideration.[9]  *See* (ECF No. 8 at 10-12).

---

[8] Additional record evidence providing substantial support for the ALJ's RFC determination will
be discussed in Section C, below, in addressing the ALJ's assessment of Plaintiff's testimony
regarding the severity of his symptoms.

[9] Dr. Butler reviewed records from: (i) CHS; (ii) Miami Beach Community Health Center
(Dr. Rangel); (iii) MD Now Urgent Care; (iv) Dr. Brinson's consultative examination report; (v)

In July 2022, after having reviewed Plaintiff's medical record, Dr. Butler found that Plaintiff had no limitations in understanding or memory and could follow and understand simple and detailed instructions, but was moderately limited in: (i) his ability to maintain attention and concentration for extended periods; (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iii) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (iv) perform at a consistent pace without an unreasonable number and length of rest periods. (R. 84). In explaining Plaintiff's moderate limitations in concentration, persistence and pace, Dr. Butler stated that Plaintiff "may lack motivation/energy to meet scheduling expectations and likely to work at a slower pace when [symptoms] are active." *Id.* Dr. Butler also found that Plaintiff was moderately limited in his ability to interact appropriately with the public, adding that Plaintiff "[w]ould do best in an environment that allows for minimum contact with the public." *Id.*

> Relevant to Plaintiff's Motion, in evaluating Dr. Butler's opinion, the ALJ wrote:
>
> I also considered the prior administrative findings of State Agency medical reviewer, Michelle Butler, Psy.D. who opined that the claimant would do best in an environment that allows for minimal contact with the public, and noted that while the claimant would sustain sufficient attention and concentration for tasks, he may lack motivation and energy to meet scheduling expectations and likely would work at a slower pace and found that this opinion was not persuasive. (Ex. 4A). In reaching this finding, I found that this view was not fully supported by his mental examinations with his providers, as they generally found the claimant with unremarkable mental presentation. (Ex. 7F/9, 12-13). Moreover, I found that this view was not consistent with the record as a whole which generally showed the claimant no significant mental health treatment.

(R. 18).

---

Dr. Weitz's consultative examination report; and (vi) Dr. Muhammad Umair Javaid's report. (R 78-79). She also reviewed Plaintiff's Function Report, Pain Questionnaire, HIV Questionnaire, and other third-parry reports. (R. 78).

Thus, the ALJ concluded that Plaintiff could perform simple routine tasks with "occasional interaction" with coworkers, supervisors, and the public.  (R. 15).  Plaintiff argues that the ALJ erred by, among other things, not adopting Dr. Butler's seemingly more restrictive limitation requiring "minimum contact" with the public.  (ECF No. 8 at 9).  According to Plaintiff, an individual who needs to work in total isolation from others at least one-third of the day would not be able to perform any job.  *Id*. (citing to VE's testimony at R. 47-48).  Plaintiff also argues that the ALJ applied an incorrect standard in evaluating Dr. Butler's opinion when she stated that the opinion was "not fully supported" by the record evidence.  *Id.*  Both arguments are unpersuasive.

In discounting Dr. Butler's opinion, the ALJ sufficiently addressed the supportability and consistency factors.  For example, the ALJ accurately noted that Dr. Butler's limitation to "minimal contact" with the public was not fully supported by Plaintiff's mental status examinations, which reflect normal examination findings despite Plaintiff's repeated complaints of depression and anxiety (as discussed above in Section B(2)).  In particular, the ALJ cited to CHS records, reflecting Plaintiff's diagnoses of moderate depression (single episode) and generalized anxiety resulting from Plaintiff's reported 2020 dispute with his homeowners' association (about the removal of his home garden).  (R. 18) (citing Exhibit 7F at 9, 12-13).  Importantly, the ALJ need not include limitations in the RFC that the ALJ properly rejected as unsupported by the evidence.  *See Burnham v. Burnham v. Berryhill,* No. 16-CV-63013, 2018 WL 1709714, at *12 (S.D. Fla. Mar. 7, 2018) (quoting *Crawford*, 363 F.3d at 1161); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find to exist."); *Norman v. Comm'r Soc. Sec.*, No. 14-CV-1498-T-30MAP, 2015 WL 4397150, at *8 (M.D. Fla. July 16, 2015) (noting that the

ALJ "submits to the expert only those [limitations] supported by objective evidence of record"). Here, the medical evidence does not support a limitation of "minimum contact" with the public.

Next, Plaintiff's argument that the ALJ's use of the words "not fully supported" in evaluating Dr. Butler's opinion runs afoul of the "preponderance of the evidence" standard in 20 C.F.R. § 404.953 is similarly unpersuasive.  (ECF No. 8 at 10-11).  Indeed, having reviewed the ALJ's Decision as a whole, the undersigned finds that the Decision is supported by substantial evidence, which is greater than a preponderance of the evidence.  *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1265 (11th Cir. 2024) ("[W]hen the ALJ's decision is read as a whole—it is clear why the ALJ found the opinion inconsistent with the record.").  Here, the ALJ's Decision reflects her fulsome consideration of the record, which confirms Plaintiff's consistently unremarkable mental status examination results.  *See* (R. 13-19) (ALJ's discussion of the medical record (Exhibits 1F through 10F)); *see also* (R. 618-19, 622, 626-27) (CHS treatment notes reflecting normal mental status examinations results on Plaintiff's three visits, despite Plaintiff's complaints of depression and anxiety); (R. 760-61) (Dr. Brinson's mostly normal mental status examination results, despite Plaintiff's complaints of more severe symptoms and the doctor's disabling Opinion); (R. 300-52, 388, 440-49, 531-63, 581-613, 631-754) (Exhibits 1F, 2F, 5F, 8F) (Dr. Rangel's treatment notes between 2017 and 2023, reflecting Plaintiff's sporadic complaints of low energy, depression, and/or anxiety, but finding generally normal mental health status upon examination).  Ultimately, it is the ALJ's duty to weigh the medical evidence.[10]  *Milner*, 275 F. App'x at 948 (reiterating that the ALJ is to weigh the evidence and make credibility determinations).  Thus, the undersigned finds that the ALJ applied the proper legal standards in

---

[10] Simply stated, as the Government points out, the ALJ's use of the words "not fully supported" does not result in the application of a new evidentiary standard, but merely reflects the ALJ's evaluation of the level of supportability for Dr. Butler's opinion.  *See* 20 C.F.R. § 404.1520c(c)(2).

considering Dr. Butler's opinion, and the ALJ's RFC determination is supported by substantial evidence.

### C.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints

In challenging the ALJ's RFC determination, Plaintiff also argues that the ALJ erred in her consideration of Plaintiff's subjective symptoms and limitations.  (ECF No. 8 at 1, 3, 6-7).  But, other than repeating the legal standards governing an ALJ's evaluation of a claimant's subjective complaints, Plaintiff does not identify what it is the ALJ purportedly did wrong or failed to do. The cursory nature of Plaintiff's argument is itself cause to reject it.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citations omitted) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").  Nonetheless, for completeness, the undersigned rejects the argument on the merits.

A claimant's statements about his symptoms, without more, are insufficient to establish disability.  *See* 20 C.F.R. § 404.1529(a) (claimant's statements regarding pain or other symptoms do not establish disability if unsupported by "objective medical evidence from an acceptable medical source that shows" the claimant has a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged).  Thus, when a claimant attempts to show disability through his own testimony, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms."  *Contreras-Zambrano v. Comm'r of Soc. Sec. Admin.*, 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p).  "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to

which an individual's symptoms limit [his] ability to perform work-related activities." *Id.* at 703-04; *see* 20 C.F.R. § 404.1529(c); *see also* 20 C.F.R. § 404.1545(e).

In conducting this two-step inquiry, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [him]." 20 C.F.R. § 404.1529(c)(4).  Moreover, a claimant's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

When the ALJ discredits a claimant's subjective statements, the ALJ must give "explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Whitmore v. Comm'r Soc. Sec. Admin.*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also Woodall v. Kijakazi*, No. 20-CV-60822, 2023 WL 3161751, at *9 (S.D. Fla. Apr. 3, 2023), *report and recommendation adopted*, 2023 WL 3168471 (S.D. Fla. Apr. 28, 2023) (recommending remand for ALJ to "explain his reasons for either accepting claimant's testimony or articulate adequate reasons to reject it").  "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).  Nevertheless, the Court will not disturb a clearly articulated finding about subjective complaints that is supported by substantial evidence. *Venturella v. Kijakazi*, 21-CV-61838, 2022 WL 4110699 (S.D. Fla. Aug. 18, 2022), *report and recommendation adopted,* 2022 WL 4110339 (S.D. Fla.

Sept. 8, 2022) (citing *Whitmore*, 855 F. App'x at 643).  Moreover, on review of the ALJ's Decision,

the question is not "whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but

whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x

935, 939 (11th Cir. 2011).

Here, after referencing the proper legal standards (*i.e.*, 20 C.F.R. § 404.1529 and SSR 16-

3p), the ALJ found that although Plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity,

persistence, and limiting effects of these symptoms were "not entirely consistent with the medical

evidence and other evidence in the record."  (R. 15).  The ALJ explained:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects
> of his symptoms, they are inconsistent because treatment records have shown that
> [his] symptoms have proven generally "stable" with conservative treatment efforts.
> In reaching this finding, treatment records have shown that while [Plaintiff]
> reported disabling limitations in July 2018, noticeably, treatment records generally
> proved unremarkable for treatment this month.

(R. 15).

In addition to Plaintiff's testimony, the ALJ considered Plaintiff's Function Reports and

statements from several friends.  (R. 18) (referencing Exhibits 4E, 13E, 18E, and 19E) (Plaintiff's

HIV and Pain Questionnaires and third-party letters from Plaintiff's friends).  As to these, the ALJ

found that the "persistency" of the stated symptoms was "not fully substantiated" by the record.

The ALJ added:

> In reaching this finding, I found that while the claimant asserted that he experiences
> disabling fatigue, lack of concentration, and lack of energy, which restricts his
> ability perform even basic tasks, notably, upon examination his providers have
> consistently found him with proper orientation and no evidence of significant
> limitation (Ex. 2F, 5F, 8F). Furthermore, despite his testimony of isolating from
> other including family, and enduring regular panic attacks, treatment records have
> shown little in the way of continued mental health treatment (Ex. 2F, 5F, 8F). In
> fact, treatment records have shown conversely, as providers have noted that the

claimant has stopped taking his psychotropic medications and often is not compliant in his HIV medications (Ex. 7F/6, 8F/45). This severely erodes the claimant's subjective reports regarding his functional limitations, as noticeably, his failure to take his medications show a greater ability to maintain, even without their added benefit.

(R. 18-19).

Against this legal and factual backdrop, the undersigned finds that the ALJ provided adequate and explicit reasons for discounting Plaintiff's subjective statements, which are supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62. As the ALJ noted, Plaintiff's statements of disabling symptoms were contradicted by his medical and mental health examinations. (R. 18) (citing Exhibits 2F, 5F, 8F) (Dr. Rangel's treatment notes). Further, despite Plaintiff's testimony about his isolation and repeated panic attacks, Plaintiff's minimal mental health treatment records (i.e., three visits to CHS in the spring of 2022) and his treatment notes from Dr. Rangel simply do not support the severity or persistency of his claimed symptoms nor do they provide any reason for the lack of such treatment.[11] (R.18) (citing Exhibits 2F, 5F, 8F). In addition, Plaintiff's statements to Dr. Weitz in July 2021 that he had undergone psychotherapy treatment "a few years ago" is belied by the medical records, which reflect only three mental health treatment sessions in spring of 2022. *See* (R. 756).

Lastly, contrary to Plaintiff's argument, the ALJ appropriately considered the frequency of Plaintiff's mental health treatment in evaluating Plaintiff's subjective complaints and determining

---

[11] As discussed above, Plaintiff was treated by Dr. Rangel for HIV and low testosterone levels between July 2017 and January 2023. During none of those 14 visits, however, did Dr. Rangel note any disabling (or even severe) mental health symptoms. Rather, Dr. Rangel consistently found Plaintiff to be fully oriented, with appropriate mood, affect, and thought content. *See, e.g*., (R. 344-48) (2/26/19 treatment note); (R. 340-41) 4/26/19 treatment note); (R. 327-29) (10/22/19 treatment note); (R. 318-23) (2/10/20 treatment note); (R. 310-13) (2/25/20 treatment note); (R. 304-06) (7/31/20 treatment note); (R. 548-49) (0/24/21 treatment note); (R. 538-42) (12/14/21 treatment note); (R. 534-35) (1/31/22 treatment note); (R. 675-78) (12/27/22 treatment note); (R. 633) (1/10/23 treatment note).

Plaintiff's RFC.  *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . [then] we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints."); *Castro v. Kijakazi*, No. 22-CV-21057, 2023 WL 3819947, at *10 (S.D. Fla. May 19, 2023), *report and recommendation adopted,* 2023 WL 3816710 (S.D. Fla. June 5, 2023) (finding RFC was supported by substantial evidence where claimant's "lack of aggressive [mental health] treatment" . . . suggested that claimant's symptoms and limitations were not as severe as alleged); *Aguilera v. Berryhill*, No. 16-CV-23961, 2017 WL 2813589, at *11 (S.D. Fla. June 29, 2017) (finding no error in the ALJ's RFC assessment where "infrequent treatment and failure to pursue more aggressive treatment indicated that the allegations of debilitating symptoms were simply not as severe as alleged and not appropriate for the RFC analysis").

On review of the ALJ's determination, the question is not "whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 939.  Where, as here, the ALJ gave "explicit and adequate reasons" for discounting Plaintiff's statements about the severity of his symptoms, the undersigned will not disturb the ALJ's clearly articulated finding, which is supported by substantial evidence.  *See Whitmore*, 855 F. App'x at 643; *see also Woodall*, 2023 WL 3161751, at *9; *Venturella,* 2022 WL 4110699, at *6-7.  Accordingly, the ALJ applied the proper legal standards in discrediting Plaintiff's testimony, and the ALJ's RFC determination is supported by substantial evidence.

## V.    **RECOMMENDATION**

Accordingly, for the reasons set forth above, Plaintiff's Motion (ECF No. 8) is **DENIED**, Defendant's Motion (ECF No. 9) is **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on March 20, 2025.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record